# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TORI NEAL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:21CV247 |
| | ) |
| STATE OF NORTH CAROLINA, | ) |
| | ) |
| Respondent. | ) |

### MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 4.) Respondent has moved to dismiss on grounds of untimeliness. (Docket Entries 16, 17.) For the reasons that follow, the Court should grant Respondent's Motion to Dismiss and dismiss the Petition as untimely.

## I. Procedural History

On July 26, 2011, in the Superior Court of Durham County, a jury found Petitioner guilty of first-degree murder and robbery with a dangerous weapon in cases 07CRS54602 and 08CRS13587. (See Docket Entry 4, ¶¶ 1, 2, 5, 6; see also Docket Entry 17-2.) The trial court merged the convictions into first-degree murder and sentenced Petitioner to life in prison without the possibility of parole. (See Docket Entry 4, ¶ 3; see also Docket Entry 17-2.) Petitioner appealed (see Docket Entry 4, ¶¶ 8-9), and the North Carolina Court of Appeals issued an opinion finding no error, State

v. Nelson, No. COA11-1521, 221 N.C. App. 434 (table), 727 S.E.2d 25 (table), 2012 WL 2308492, at *2 (June 19, 2012) (unpublished). Petitioner did not pursue additional direct review.[1]

Shortly thereafter, North Carolina Prisoner Legal Services, Inc. ("NCPLS") agreed to review Petitioner's case (see Docket Entry 17-4 at 3; see also Docket Entry 21 at 26),[2] but ultimately concluded, on September 18, 2013, that Petitioner lacked meritorious grounds on which to bring a motion for appropriate relief ("MAR") in the trial court (see Docket Entry 17-5). Additionally, the North Carolina Center on Actual Innocence ("NCCAI") informed Petitioner by letter dated November 13, 2017, that it had received his draft MAR and would review his documents. (See Docket Entry 21 at 30.) The NCCAI requested that Petitioner not file the MAR until the NCCAI could review his case further. (See id.) On March 11, 2020, the NCCAI notified Petitioner in writing that it would "not be able to provide [him] with assistance" in pursuing a MAR. (Id. at 32.)

---

[1] Although the Petition indicates that Petitioner made various additional filings on direct appeal to the North Carolina Supreme Court (see Docket Entry 4, ¶ 9(g)) and the United States Supreme Court (see id., ¶ 9(h)), Petitioner did not provide the Court with copies of those filings (see Docket Entries 4, 20, 21). Moreover, the dates he supplied of those filings' denials, e.g., "03/3/20" (id., ¶ 9(g)) and "09/20/19" (id., ¶ 9(h)), make clear that such filings, if made, sought review of his MAR's denial on September 11, 2019 (see Docket Entry 17-4 at 11) and did not form part of his direct appeal, which concluded in 2012, see Nelson, 2012 WL 2308492, at *1.

[2] Throughout this Memorandum Opinion, pin citations to page numbers refer to the page numbers that appear in the footer appended to documents upon their docketing in the Court's CM/ECF system.

2

During the time that the NCCAI undertook review of Petitioner's case, he submitted a pro se MAR (along with a motion to appoint counsel and various supplemental filings) to the Durham County Superior Court. (See Docket Entry 4, ¶ 11; see also Docket Entry 17-4 at 2.)[3] The trial court accepted Petitioner's MAR as filed on March 14, 2018 (see Docket Entry 17-4 at 2), and denied it on September 11, 2019 (see id. at 11).[4]

Petitioner then filed the instant Petition on May 12, 2020. (See Docket Entry 4 at 15.)[5] Respondent moved to dismiss the Petition on grounds of untimeliness (Docket Entries 16, 17),[6] and

---

[3] The record lacks a copy of Petitioner's MAR.

[4] The Petition suggests that Petitioner may have sought review of his MAR's denial in the North Carolina appellate courts (see Docket Entry 4, ¶ 9(g)-(h)); however, Petitioner did not provide the Court with copies of those filings (see Docket Entries 4, 20, 21) and, as explained in more detail below, those filings, if they occurred, would not change the timeliness analysis.

[5] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems Section 2254 petitions as filed on the date the petitioner signs the petition, under penalty of perjury, as submitted to prison authorities. Here, the Petition reflects that Petitioner submitted the Petition to prison authorities on "5/12/20" but "[e]xecuted" the Petition on "05/12/21." (Docket Entry 4 at 15 (emphasis added).) The Court need not resolve that conflict because, as explained in more detail below, even construing the filing date as May 12, 2020, does not change the timeliness analysis.

[6] Petitioner contends Respondent's Motion to Dismiss and Supporting Brief "failed to timely comply with this Court's Order dated [June 14,] 2021, [] giving [Respondent] a[] deadline [of November 14,] 2021 to respond to [the Petition]." (Docket Entry 21 at 4 (standard capitalization applied, underscoring omitted).) That contention lacks merit. The undersigned instructed Respondent to file an answer or other responsive pleading within 40 days from the date the Court received Petitioner's filing fee. (See Docket Entry 6 at 2.) The Court received Petitioner's filing fee on October 5, 2021. (See Docket Entry dated Oct. 5, 2021.) Respondent timely filed its Motion to Dismiss and Supporting Brief on November 15, 2021 (Docket Entries 16, 17), because Sunday, November 14, 2021, constituted the 40th day after October 5, 2021. As such, Respondent had "until the end of the next day that [wa]s not a Saturday, Sunday, or legal holiday" to file its responsive pleadings. Fed. R. Civ. Proc. 6(a)(1)(C).

3

Petitioner responded in opposition (Docket Entries 20, 21).[7] For the reasons that follow, the Court should grant Respondent's Motion to Dismiss, because Petitioner submitted his Petition outside of the one-year limitations period.

## II. Grounds for Relief

The Petition raises four grounds for relief:

1) "Juror-Misconduct" (Docket Entry 4, ¶ 12(Ground One); see also id., ¶ 12(Ground One)(a) (alleging "Juror #11 . . . [G]oogled me and my case during trial, [with]out the court, or counselor knowledge" (stray comma omitted));

2) "Prosecutorial-Misconduct" (id., ¶ 12(Ground Two));

3) "Ineffective Assistance of Counsel" (id., ¶ 12(Ground Three)); and

---

[7] Petitioner additionally filed a "Pleading for Enforcement of Fundamental Rights" on March 28, 2022 (Docket Entry 23), requesting the Court to grant him essentially the same relief, and for the same reasons, as alleged in his Petition (compare Docket Entry 4, with Docket Entry 23), as well an Amended Petition on April 7, 2022 (Docket Entry 24). As more than 21 days had passed since Respondent filed its responsive pleadings (see Docket Entries 16, 17 (reflecting filing date of Nov. 15, 2021)), in order to amend the Petition under Rule 15(a)(2) of the Federal Rules of Civil Procedure, Petitioner must either obtain the permission of Respondent or seek leave of Court. Those documents do not reflect that Petitioner had secured the consent of Respondent to amend the Petition (see Docket Entries 23, 24), and Petitioner has not sought leave of Court to do so (see Docket Entries dated Nov. 15, 2021, to present). Even if the Court construes those documents as requests by Petitioner for leave to amend his Petition, the Court should deny such requests on grounds of futility because, for the reasons explained more fully in the Discussion section, the statute of limitations would bar any such amended grounds for relief. See Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that reasons to deny leave to amend include "futility of amendment"); see also Keller v. Prince George's Cnty., 923 F.2d 30, 33 (4th Cir. 1991) ("[If] the statute of limitations has expired on [a] claim . . ., leave to amend would be futile . . . .").

4) "Insufficient-Evidence" (id., ¶ 12(Ground Four).[8]

III. Discussion

Respondent seeks dismissal of the Petition on the grounds that Petitioner filed it outside of the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1). (See Docket Entry 17 at 3-5.) In order to assess Respondent's statute of limitations argument, the Court must first determine when Petitioner's one-year period to file his Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the

---

[8] The Court initially docketed "Petitioner's Verified Petition for Writ of Habeas Corpus w/Affirmation in Support of" on March 25, 2021 (Docket Entry 1 at 1); however, the undersigned struck that filing and instructed Petitioner to file a new petition to correct the defects of the first filing (see Docket Entry 3). After filing the instant Petition, Petitioner subsequently filed a "Motion for Consolidation" (Docket Entry 12), requesting the Court to "consolidate[]" the initial (now stricken) filing and the Petition "as one petition, by annexing the [stricken filing] to the back of [the Petition]" (id. at 1). The undersigned will deny that Motion, as the initial filing, once stricken, constitutes a nullity that cannot serve to supplement a subsequent pleading. See Grubb v. Budz, No. 4:08CV545, 2010 WL 1816809, at *2 (N.D. Fla. Apr. 16, 2010) (unpublished) (rejecting the petitioner's attempt to rely on prior argument in "emergency petition for writ of habeas corpus" because that "petition was stricken as a nullity"), recommendation adopted, 2010 WL 1816804 (N.D. Fla. May 5, 2010) (unpublished). In any event, nothing in the prior filing alters the untimeliness analysis in the Discussion section.

5

> United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005).

Respondent correctly contends that the Petition qualifies as untimely under subparagraph (A). (See Docket Entry 17 at 3-5.)[9]

---

[9] Neither Petitioner nor Respondent argue that subparagraphs (B) or (C) apply in this situation. (See Docket Entries 17, 21.) Moreover, the plain language of subparagraphs (B) and (C) confirms that they have no possible application, as Petitioner's Grounds for Relief do not assert a state-created "impediment to filing" the instant Petition, 28 U.S.C. § 2244(d)(1)(B), or invoke a new "constitutional right" recognized by the United States Supreme Court and "made retroactively applicable to cases on collateral review," 28 U.S.C. § 2244(d)(1)(C). Petitioner conclusorily maintains that his Petition qualifies as timely pursuant to 28 U.S.C. § 2244(d)(1)(D). (See Docket Entry 21 at 12-13). However, subparagraph (D) could not apply because Petitioner knew, or through exercise of due diligence should have known, of the factual predicates of Grounds Two and Four, as well as the ineffective assistance of trial counsel allegations of Ground Three, since his the date of his conviction on July 26, 2011 (see Docket Entries 4, 17), and of Ground Three's allegations of ineffective assistance of appellate counsel, at the latest, at the time of the denial by the North Carolina Court of Appeals of his direct appeal on June 19, 2012, see Nelson, 2012 WL 2308492, at *1. Moreover, Petitioner's own filings make clear that he knew about the potential juror misconduct alleged in Ground One while his appeal remained pending. (See Docket Entry 21 at 24 (reflecting letter from appellate counsel to Petitioner dated April 24, 2012, responding to Petitioner's "recent letter" asking why appellate counsel had not raised juror misconduct letter on appeal).) "[P]etitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim . . . ." DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006). In his filings, Petitioner makes no attempt to explain why he could not have discovered the factual predicates of his Grounds
(continued...)

6

Under that subparagraph, Petitioner's conviction became final on July 24, 2012 — the final day on which he could have filed a notice of appeal or a petition for discretionary review ("PDR") in the North Carolina Supreme Court, regarding the decision of the North Carolina Court of Appeals on June 19, 2012.  See N.C. R. App. P. 14(a) (requiring notice of appeal within 15 days after Court of Appeals issues mandate), 15(b) (allowing until 15 days after Court of Appeals issues mandate to file PDR), 32(b) (stating that mandate shall issue 20 days after filing of opinion unless court orders otherwise); see also Gonzalez v. Thaler, 565 U.S. 134, 149-50 (2012) (holding that a petitioner's case finalizes when time for pursuing direct review expires); Saquilar v. Harkleroad, 348 F. Supp. 2d 595, 598-601 (M.D.N.C. 2004) (deeming the petitioner's conviction final 35 days after North Carolina Court of Appeals issued opinion where the petitioner did not file PDR).

Petitioner's one-year period under AEDPA then ran, unimpeded, from July 24, 2012, until it expired one year later on July 24,

---

⁹(...continued)
for Relief earlier.  (See Docket Entries 4, 21.)  Absent any such showing, Petitioner has not demonstrated the necessary "due diligence" for application of subparagraph (D).  See Freeman v. Zavaras, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered factual predicate of claim earlier); Farabee v. Clarke, No. 2:12CV76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where the petitioner's "threadbare" allegations failed to explain inability to discover predicate earlier), recommendation adopted, 2013 WL 1098093 (E.D. Va. Mar. 13, 2013) (unpublished); Norrid v. Quarterman, No. 4:06CV403, 2006 WL 2970439, at *1 (N.D. Tex. Oct.16, 2006) (unpublished) (concluding that the petitioner bore burden of demonstrating applicability of subparagraph (D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (refusing to apply subparagraph (D) when the petitioner "never identifie[d] when or how he discovered his 'new evidence'").  Accordingly, subparagraph (D) does not apply.

2013.  Because Petitioner did not file the instant Petition until May 12, 2020, that filing came over six years out of time.  Moreover, because (as detailed above) Petitioner submitted all of his post-conviction filings well <u>after</u> AEDPA's one-year statute of limitations had <u>already run</u>, none of those belated filings could toll the limitations period, <u>see</u> <u>Minter v. Beck</u>, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after expiration of federal limitations period do not restart or revive that period).

In Petitioner's response opposing the instant Motion to Dismiss, he contends that he "could not petition for relief upon the infringements of his constitutional rights [u]ntil the infringement occurs" (Docket Entry 21 at 12), essentially arguing that he could not file the Petition until the trial court denied his MAR on September 11, 2019 (<u>see</u> <u>id.</u> at 12-13).  That argument would have merit if Petitioner had filed his MAR during the pendency of AEDPA's one-year limitations period.  <u>See</u> 28 U.S.C. § 2244(d)(2) (providing that "[t]he time during which a properly filed application for [s]tate post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation").  Here, however, Petitioner did not file his MAR until March 14, 2018 (<u>see</u> Docket Entry 17-4 at 2), over four years after the statute of limitations had run, and such post-expiration filings cannot revive

8

the statute of limitations, see Harris v. Hutchinson, 209 F.3d 325, 327-38 (4th Cir. 2000).

Although Petitioner did not supply any arguments in favor of the Petition's timeliness in the paragraph of the Petition requesting that he "explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar [his P]etition" (Docket Entry 4, ¶ 18), in his response in opposition to the instant Motion, Petitioner argued that "ineffective assistance of counsel denied Petitioner an opportunity to obtain [the] requested relief on an earlier date" (Docket Entry 21 at 5 (standard capitalization applied, underscoring omitted)). The Court could construe that argument as a request that the Court equitably toll the statute of limitations, see Holland v. Florida, 560 U.S. 631, 649 (2010) (holding that equitable tolling requires proof that a petitioner pursued his rights diligently and that "extraordinary circumstance . . . prevented timely filing").

In support of Petitioner's contention that "ineffective assistance" prevented him from filing his Petition in a timely manner, he argues as follows:

> . . . [Petitioner] requested [ his a]ppellate counsel to use the juror-misconduct reported by the superior court clerk[,] but [appellate counsel] didn't/refuse[d] to use such in Petitioner's direct appeal. Less than two months later, . . . [he] wrote to [NCPLS] for post-conviction assistance to help litigate the issues that [appellate counsel] refused to use. For several months, [Petitioner] wrote to [an attorney at NCPLS] to make sure that he used the issues (including [j]uror-[m]isconduct) that [we]re on the "list of errors" that [Petitioner]

9

> sent to [the NCPLS attorney] w[ith]out any response, which [Petitioner] then wrote to [the North Carolina Office of Indigent Defense Services] to file a complaint. Promptly after receiving said complaint, [the NCPLS attorney] wrote [Petitioner] to inform [him] that [the NCPLS attorney] could find no issues to litigate. A few short months after [the NCPLS attorney] informed [Petitioner] of [that] finding[, Petitioner] paid [another attorney] to provide legal-assistance with said post-conviction issues on 02/28/2014. [That attorney] pas[s]ed away in early July 2019. In late 2017, [that attorney] informed me of his overloaded case-law and limited amount of time [v]ia telephone. After said-call, [Petitioner] immediately wrote to the [NCCAI] for post-conviction assistence [sic] on 11/13/2017. On March 11, 2020, the [NCCAI] wrote [Petitioner] to inform [him] that they would not provide legal assistance. Upon realizing that [he] was not going to receive any legal-assistance from the state sponsored legal-services[, he] filed [his] MAR [p]ro se . . . in March 2018. The majority of the exhibits annexed []to said-MAR . . . were never personally-provided to [Petitioner] by Legal-Assistant and/or any other Legal-Entity[.] The majority of the exhibits [he] used in [his p]ro se MAR were provided by third-parties in the beginning of 2018, and I promptly filed said MAR.

(Docket Entry 21 at 5-7 (underscoring, numbering, some parentheses and internal quotation marks, stray commas, and internal parenthetical citations omitted).) For the reasons explained more fully below, those contentions fall far short of establishing "extraordinary circumstances" that prevented timely filing. See Holland, 560 U.S. at 649.

To begin, appellate counsel advised Petitioner of her decision not to raise the juror misconduct issue on appeal on April 24, 2012, before Petitioner's convictions even finalized on direct review and long before the limitations period would eventually expire on July 24, 2013. (See Docket Entry 21 at 24.)

10

Accordingly, Petitioner has entirely failed to show how appellate counsel's decisionmaking prevented Petitioner from raising the juror misconduct issue in a timely federal petition under Section 2254.

Petitioner's complaints about delays by NCPLS in reviewing his case fare no better, as "this Court [and others within the Fourth Circuit] ha[ve] long held that a lack of assistance from NCPLS does not constitute grounds for equitable tolling," Malinzak v. North Carolina, No. 1:20CV320, 2020 WL 8474854, at *4 (M.D.N.C. Dec. 30, 2020) (unpublished), recommendation adopted, 2021 WL 466969 (M.D.N.C. Feb. 9, 2021) (unpublished). See, e.g., Goldman v. Keller, No. 1:11CV258, 2012 WL 2904577, at *4 (M.D.N.C. July 16, 2012) (unpublished) ("[W]aiting for a response from NCPLS while the time to file in this Court expires does not generally entitle a petitioner to equitable tolling."); Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) ("[The p]etitioner [] has implied that his time to file should be tolled because . . . [NCPLS] . . . delayed before deciding to take his case[, but] . . . this Court and others have previously held that such complaints do not warrant equitable tolling."); Hood v. Jackson, No. 5:10-HC-2008, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished) (holding that the petitioner's "assertion that he sought the assistance of [NCPLS] . . . d[id] not constitute exceptional circumstances for the purposes of equitable tolling");

11

Dockery v. Beck, 1:02CV70, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished) (rejecting the petitioner's allegation that equitable tolling should apply because "he did not file his petition earlier because he was waiting to hear from an attorney working for [NCPLS]," and noting that he "ha[d] utterly failed to explain why he could not, at an earlier date, have filed a *pro se* petition, inasmuch as he did so after the one-year period had expired").

Petitioner's insistence that the NCCAI's unwillingness to take his case and/or instruction not to file a pro se MAR qualify to toll the limitations period also misses the mark. Petitioner admits that he did not write to the NCCAI until November 13, 2017 (see Docket Entry 21 at 6), over four years after the statute of limitations had already run. Thus, Petitioner has not shown that any inaction or instruction by the NCCAI prevented timely filing of a federal petition under Section 2254.

With regard to Petitioner's post-conviction counsel, although Petitioner provided some evidence that he retained that counsel on or about February 28, 2014, and that counsel passed away in July 2019 without having filed any post-conviction materials on Petitioner's behalf, such facts still do not constitute "extraordinary circumstances" warranting equitable tolling, Holland, 560 U.S. at 649. In Holland, a death row inmate's attorney failed to file a federal petition despite several letters

12

from the inmate attempting to file before time ran out.  Id. at 652.  Additionally, the attorney in Holland failed to communicate with the inmate, do basic research on his case, or inform the inmate of a crucial court decision regarding his case.  Id.  The United States Supreme Court concluded that, under these circumstances, equitable tolling may apply, and that the appellate court must explore that matter on remand.  Id. at 654.  In contrast to Holland, Petitioner's efforts to obtain post-conviction counsel occurred on February 28, 2014, over six months after the statutory limitations period had already run on July 24, 2013.  Accordingly, nothing post-conviction counsel did or did not do impaired Petitioner's ability to file a federal petition prior to the deadline.

Lastly, Petitioner's vague claim of inability to obtain supporting documents for his MAR fails to establish grounds for equitable tolling.  (See Docket Entry 21 at 7.)  Petitioner does not identify which exhibits he could not obtain, what efforts he undertook to obtain the exhibits, or how he succeeded in eventually obtaining the exhibits.  (See id.)  Under such circumstances, Petitioner simply has not shown the diligence required or any exceptional reason to secure equitable tolling.  See Allen v. Johnson, 602 F. Supp. 2d 724, 727–28 (E.D. Va. 2009) (unpublished) (holding that "inability to secure court documents do[es] not

13

qualify as [an] extraordinary circumstance[]" (internal quotation marks omitted)).[10]

## IV. Conclusion

The statute of limitations bars the instant Petition.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 16) be granted, that the Petition (Docket Entry 4) be dismissed, that Petitioner's Motion for Consolidation (Docket Entry 12) be denied, and that a judgment be entered dismissing this action, without issuance of a certificate of appealability.

**IT IS ORDERED** that Petitioner's Ex Parte Motion for Appointment of Counsel (Docket Entry 22) is **DENIED.**

                                /s/ L. Patrick Auld
                                **L. Patrick Auld**
                      **United States Magistrate Judge**

April 26, 2022

---

[10] In view of the Petition's untimeliness and lack of grounds for equitable tolling, no basis exists to appoint counsel for Petitioner. Accordingly, the undersigned will deny Petitioner's "Ex Parte Motion for Appointment of Counsel" (Docket Entry 22).

14